UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MADISON REALTY CAPITAL, L.P.,

                Plaintiff,

-against-

TRACY SUTTLES,

                Defendant.

Civil Action No.:
08 CV 4194 (PAC)(MHD)

**MEMORANDUM OF LAW ON BEHALF OF PLAINTIFF MADISON REALTY CAPITAL, L.P. IN SUPPORT OF MOTION FOR AN ORDER AWARDING IMMEDIATE POSSESSION OF COLLATERAL SECURITY**

Cole, Schotz, Meisel, Forman &
Leonard, P.A.
900 Third Avenue
16th Floor
New York, New York 10022
(212) 752-8000

On the Brief
    Leo V. Leyva (LL-9061)
    Nolan E. Shanahan (NS-4598)

45468/0010-3109961v3

## PRELIMINARY STATEMENT

Plaintiff, Madison Realty Capital, L.P. ("Madison"), respectfully submits this Memorandum of Law in support of its motion for an Order providing Madison with immediate possession of certain collateral pledged by defendant Tracy Suttles ("Suttles") including, but not limited to, his ownership interests in one of the principal borrower entities, SE Marina Way Partnership, L.P. ("Marina"). On January 29, 2007, Madison extended a $10,750,000 loan to Suttles and various entities he controls. That loan is indisputably and admittedly in default. As a result of that default, Madison has the absolute right to obtain all of the collateral pledged by Suttles as security for the loan.

In addition, and as demonstrated below, to effectively realize upon its collateral Madison requires immediate access to the books and records of the entities pledged, and the deposition of Suttles. As a result of Suttles' propensity to fraudulently transfer assets without consideration, Madison also requires an injunction precluding Suttles from dissipating or diverting its collateral. Madison also requires an Order directing Suttles to immediately instruct the tenants of the marina owned and operated by SE Marina Way Partnership, L.P., and all persons maintaining open accounts with SE Marina Way Partnership, L.P., or with whom SE Marina Way Partnership, L.P. does business on an "accounts receivable" basis, to deliver all payments due under such accounts to a lock box address to be specified by Madison, all as required by and pursuant to the Cash Management Agreement executed by and between the parties.

Suttles' defaults under the Note[1], and each of the Pledge Agreements at issue have been acknowledged and confirmed by Suttles by his execution of a written Forbearance Agreement, and are absolutely irrefutable. As such, pursuant to the express language and undeniable terms

---

[1] Capitalized terms not otherwise defined herein shall have the meanings attributed to them in the accompanying Affidavit of John Sorel sworn to on April 29, 2008 (the "Sorel Affidavit").

45468/0010-3109961v3

of the Pledge Agreements, Madison is entitled to immediate possession of its collateral, and to the other relief sought herein.

## STATEMENT OF FACTS

The facts and documentary proofs which entitle Madison to the relief requested herein are fully set forth in the Sorel Affidavit and the Verified Complaint, a true copy of which is annexed to the accompanying Affidavit of Leo V. Leyva sworn to on May 8, 2008 (the "Leyva Affidavit") as Exhibit A. For the sake of brevity, those facts will not be repeated herein but are incorporated by reference.

## ARGUMENT

### I. Applicable Standard

A party is entitled to a preliminary injunction upon a showing of "irreparable harm and either (1) a likelihood of success on the merits of the case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships" decidedly in the moving party's favor. Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775, 779-780 (2d Cir. 1994)(citations and quotations omitted). See also Time Warner Cable, Inc. v. Directv, Inc., 497 F.3d 144, 152-153 (2d Cir. 2007). Furthermore, where, as here, the moving party seeks an injunction altering the status quo, the moving party must "meet the more rigorous standard of demonstrating a clear or substantial showing of a likelihood of success on the merits." Almonstaser v. New York City Department of Education, 519 F.3d 505, 508 (2d Cir. 2008).

As set forth in greater detail below, Madison has satisfied the requirements for the issuance of both a temporary restraining order and a preliminary injunction by demonstrating the irreparable harm it will suffer and a substantial showing of its likelihood of success on the merits.

## II. Madison is Entitled to Immediate Possession of the Pledged Collateral

As expressly acknowledged by Suttles in the executed Forbearance Agreement, Suttles and the other Obligors are in default of their obligations under the Note and Deed of Trust. On, July 2, 2007, the entire indebtedness due under the Note was properly accelerated. See, Sorel Aff., Exhibit K, (p. 2).

Pursuant to each of the Pledge Agreements, Suttles' admitted defaults under the Note constitute events of default under the Pledge Agreements, which by their terms entitle Madison to immediate possession of any and all of the Pledged Interests. See, Sorel Aff., ¶ 20 and Exhibits D and F (pp. 7-9).

On these indisputable facts, Madison is entitled to an order granting it immediate possession of the property pledged, even before the grant of summary judgment in the Note Action.[2] While federal law controls on the determination of the procedural determination of the issuance of a preliminary injunction here, New York State case law, which will be applied to the substantive issues in this action, is also instructive on this point. A case in point is G&S Quality Inc. v. Bank of China, 233 A.D. 2d 215, 650 N.Y.S. 2d 97, 97-98 (1st Dep't 1996). There, the Appellate Division affirmed the trial court's order requiring the turnover of property, having determined, as is the case here, that there were no genuine issues of material fact relating to the plaintiff's entitlement to the property. The Court held as follows:

> The motion court's "order of seizure" was, in effect, a grant of summary judgment in a replevin action, and was procedurally proper as the parties had "deliberately charted a summary judgment course" (see, Mihlovan v. Grozavu, 72 N.Y. 2d 506, 508, 534 N.Y.S. 2d 656 531 N.E. 2d 288). Therefore, the order did not

---

[2] As set forth in the Sorel Affidavit (¶13) and in the Leyva Affidavit (¶6), by a separate action ("Note Action") Madison Realty has commenced suit on the Note (and Suttles' personal guaranty) in the Supreme Court of the State of New York, County of New York under Index Number 601305/2008 by way of a motion for summary judgment in lieu of complaint pursuant to CPLR § 3213.

4

> have to be effected by the sheriff or supported by an undertaking, as required by CLPR 7012 in the case of preliminary relief. On the merits, the argument that title lies with a third party, as asserted by defendant, is not a valid defense; the plaintiff need only establish a superior possessory right in the chattel to that of the defendant (see, Lieber v. Mohawk Arms, 64 Misc. 2d 206, 207, 314 N.Y.S. 2d 510).

Here, any argument by Suttles that he and the other Obligors have not defaulted upon the Note and Deed of Trust, and consequently, the Pledge Agreements, would be belied by the unequivocal documentary evidence in the form of the written Forbearance Agreement, and would simply be unsupportable and totally incredible. Thus, the Pledged Interests, including all of the income, cash flow, profits, rents, revenues, and receivables of Marina and SE Marina Way, LLC, should be delivered to Madison immediately, in accordance with the terms of the Pledge Agreements. See Sorel Aff., ¶¶ 11-12.

Madison also requires immediate access to all of the accounts, books and records of Marina and SE Marina Way, LLC, so that it can effectively take control of its collateral. For example, while Madison is exercising its rights under the Cash Management Agreement, and is entitled to cause all of the rents and accounts receivable payable to Marina to be sent directly to a designated lock box for Madison's benefit (see, Sorel Affidavit, ¶ 21), without access to Marina's books and records, and possibly the cooperation of Suttles himself, Madison cannot identify Marina's third-party accounts, and cannot effectively have them notified to forward their rents and payments to the lock box as required. Madison also seeks a temporary restraining order requiring Suttles to cause Marina to send a payment direction letter to all of Marina's tenants and third-party accounts, as required by the Cash Management Agreement. See Sorel Aff., Ex. H.

45468/0010-3109961v3

### III. The Undisputed Facts Confirm Madison's Immediate Entitlement To The Requested Injunctive Relief

Madison also seeks an Order enjoining Suttles from transferring, hypothecating, selling, pledging, assigning or otherwise disposing of his ownership interests in Marina or SE Marina Way, LLC, or any and all of the assets, accounts, property, cash flow, rents, income, profits, deposits, receivables, fees, investments, contracts, books and records of Marina and SE Marina Way, LLC. As demonstrated below, Madison has satisfied the requirements for the issuance of a preliminary injunction, and is entitled to the requested relief.

There can be no doubt that in the absence of the requested relief, to which Madison is contractually entitled, Madison will suffer severe and irreparable harm. Suttles has previously and blatantly diverted and secreted Madison Realty's collateral (he caused 7500 Bellaire Mall to transfer The Sharpstown Mall property, for no consideration, on the very day that it was conveyed in trust to Madison by the Deed of Trust (See, Sorel Affidavit ¶ 13)) and in the absence of the requested injunctive relief, he will no doubt attempt to do so again, especially considering the Note Action has been commenced and is proceeding expeditiously. Suttles cannot possibly be harmed by the grant of the requested relief, considering he has already consented, and that Madison is entitled to it pursuant to the Pledge Agreements (See, Sorel Affidavit ¶ 20).

In addition to the aforesaid irreparable harm that Madison will sustain in the absence of the relief requested here, Madison has made a substantial showing of a likelihood of success on the merits of its claim herein. Indeed, Suttles has admitted his defaults the defaults of the Note, Deed of Trust, and Pledge Agreements by executing the Forbearance Agreement. As such, the only issue left to be determined in this action is Madison's rights in the event of such defaults. It is respectfully submitted that the language of the Pledge Agreements is clear and unequivocal as to Madison's ultimate right to the relief requested herein.

### IV. <u>Madison is Entitled to a Temporary Restraining Order</u>

For all of the same reasons set forth above, Madison also requests that the Court grant a temporary restraining order, pending the hearing and determination of this application, preventing Suttles from transferring, selling, pledging, assigning or otherwise disposing of any and all of the Pledged Interests. In the absence of such temporary restraints, Suttles, as he has brazenly and unlawfully done before, will likely dispose of Madison's collateral, in blatant contravention and violation of Madison's duly perfected security interests.

Madison also seeks an order requiring Suttles to cause Marina to send the requisite payment direction letter to all of Marina's tenants and third-party accounts, as required by the Cash Management Agreement. Without this, Madison cannot effectively exercise its rights to take possession of the collateral afforded it under the Cash Management Agreement.

In the context of a request for a temporary restraining order, the Court must consider the adequacy of the movant's remedy at law and the balance of the equities in addition to considering the factors relating to a request for a preliminary injunction discussed above. In light of the facts and circumstances, and Suttles' willingness to defraud creditors, Madison does <u>not</u> have an adequate remedy at law. Obviously, Suttles and the Obligors, who are indebted to Madison in an amount in excess of $12,100,000, do not possess the means to satisfy the indebtedness due to Madison.

The balancing of the equities also favors the issuance of the requested relief. On the one hand, Madison will obviously suffer immediate and irreparable harm if it is not put into immediate possession of its bargained for collateral and Suttles is left free to divert or secrete of Madison's collateral. Suttles, on the other hand, would only be restrained from doing what he is in any event forbidden to do. Under these circumstances, and in light of Suttles' past and

45468/0010-3109961v3

wrongful conduct, Madison is entitled to the requested temporary restraining order protecting its rights to its collateral.

Under the above-described circumstances, and in light of Suttles' past and wrongful conduct, Madison is entitled to the requested temporary restraining order protecting its rights to its collateral.

## CONCLUSION

Madison has established, beyond any question, entitlement to the immediate possession of its bargained-for collateral. As established herein, and in the accompanying affidavit of John Sorel, Madison will suffer irreparable harm in the event that it is not immediately put into possession of its collateral, and in the absence of the requested injunctive relief.

Dated: New York, New York  
       May 8, 2008

COLE, SCHOTZ, MEISEL,  
FORMAN & LEONARD, P.A.

By: _____  
Leo V. Leyva  
Nolan E. Shanahan  
Attorneys for Plaintiff  
Madison Realty Capital, L.P.  
900 Third Avenue, 16th Floor  
New York, New York 10022  
(212) 752-8000